|   |   |   |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | UNITED STATES DISTRICT COURT | |
| 9 | WESTERN DISTRICT OF WASHINGTON AT TACOMA | |
| 10 | DOREEN LYNE, | |
| 11 | Plaintiff, | CASE NO. 2:16-CV-00643-RSM-DWC |
| 12 | v. | REPORT AND RECOMMENDATION |
| 13 | CAROLYN W COLVIN, Acting | Noting Date: December 2, 2016 |
| 14 | Commissioner of Social Security, | |
| 15 | Defendant. | |

The District Court has referred this action, filed pursuant to 42 U.S.C. § 405(g), to United States Magistrate Judge David W. Christel. Plaintiff Doreen Lyne filed this matter seeking judicial review of Defendant's denial of her application for disability insurance benefits ("DIB").

After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ") erred in evaluating the medical opinion evidence and in considering the results of a Cooperative Disability Investigation Unit ("CDIU") investigation, and consequently in formulating the residual functional capacity ("RFC") and finding Plaintiff capable of performing past relevant work or jobs existing in the national economy. Accordingly, this matter should be reversed and

1 remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner of Social
2 Security ("Commissioner") for further proceedings consistent with this Report and
3 Recommendation.

## FACTUAL AND PROCEDURAL HISTORY

On November 27, 2012, Plaintiff filed an application for DIB, alleging disability as of January 21, 2011. *See* Dkt. 10, Administrative Record ("AR") 12. The application was denied upon initial administrative review and on reconsideration. *See* AR 12. A hearing was held before ALJ Tom L. Morris on September 18, 2014. AR 12. In a decision dated October 31, 2014, the ALJ determined Plaintiff to be not disabled. AR 12-27. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. *See* AR 1; 20 C.F.R. § 404.981, § 416.1481.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by: (1) incorrectly weighing the medical opinion evidence; (2) failing to consider the results of a CDIU investigation; (3) incorrectly assessing plaintiff's credibility; and (4) incorrectly weighing the lay witness testimony. Dkt. 12, p. 1.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

**I. Whether the ALJ erred in assessing the medical opinion evidence.**

Plaintiff asserts the ALJ erred in assessing the medical opinion evidence. Specifically, Plaintiff argues the ALJ improperly discounted the medical opinions of Chris Lawrence, M.D., Paul Brown, M.D., Jon Huseby, M.D., and Norman Staley, M.D. Dkt. 12, pp. 1, 12-15.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

### A. Chris Lawrence, M.D.

Dr. Lawrence is as neurologist who has treated Plaintiff since 2004 for chronic pain and "multiple medical problems." AR 669, 1043. Dr. Lawrence submitted two letters opining regarding plaintiff's limitations. In a letter dated January 31, 2013, Dr. Lawrence noted he had been treating Plaintiff since 2004. AR 669. Dr. Lawrence opined Plaintiff is "disabled for regular work" and observed she has difficulty walking, cannot climb stairs, must frequently change positions due to back pain and muscle spasms, and cannot lift over 10 pounds and can only lift 10 pounds rarely. AR 669. He also observed Plaintiff has "markedly reduced her socialization and is unable to do a lot of chores around the house." AR 669.

1      The ALJ assigned little weight to Dr. Lawrence's medical opinions. AR 23. The ALJ

2  determined Dr. Lawrence's medical opinion was inconsistent with plaintiff's treatment history

3  and the objective clinical findings. AR 24. The ALJ also determined Dr. Lawrence's opinion

4  regarding Plaintiff's activities of daily living was undermined by the record and his opinion

5  regarding Plaintiff's limitations was undermined by other doctors' opinions. Finally, the ALJ

6  determined Dr. Lawrence's medical opinion was based, at least in part, on Plaintiff's self-report.

7  AR 24. Plaintiff argues the ALJ erred in his treatment of Dr. Lawrence's medical opinion. The

8  Court agrees.

9      First, the ALJ rejected Dr. Lawrence's medical opinion as inconsistent with plaintiff's

10  treatment history and the objective medical testing. The ALJ cited to "objective clinical testing

11  set forth above", but did not provide any specific details to support this conclusory finding. AR

12  24. As an initial matter, the ALJ's statement lacks the specificity required by the Court. As noted

13  by the Ninth Circuit:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. Moreover[,] the ALJ's analysis does not give proper weight to the subjective elements of the doctors' diagnoses. The subjective judgments of treating physicians are important, and properly play a part in their medical evaluations.

19  *Embrey*, 849 F.2d at 421-22 (internal footnote omitted); *see also* 20 C.F.R. §§ 404.1527(a)(2)

20  ("Medical opinions are statements from physicians and psychologists or other acceptable

21  medical sources that reflect judgments about the nature and severity of your impairment(s),

22  including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s),

23  and your physical or mental restrictions"). Here, the ALJ's conclusory statement finding Dr.

24

REPORT AND RECOMMENDATION - 4

1   Lawrence's opinion inconsistent with the medical records is insufficient because it provides no
2   details to assess the basis for the ALJ arriving at this conclusion. *See Embrey*, 849 F.2d at 421-
3   22; *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (the ALJ's rejection of a
4   physician's opinion on the ground that it was contrary to clinical findings in the record was
5   "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was
6   flawed").

7          Second, the ALJ observed Dr. Lawrence's medical opinion is undermined by other
8   doctors' medical opinions. For example, the ALJ observed "Dr. Lawrence noted that the
9   claimant had had extensive testing with multiple pulmonary doctors, that her ongoing respiratory
10  distress and hypoventilation had necessitated continual supplemental oxygen since 2010, and that
11  her mobility problems were due in part to the claimant's breathing problems." AR 24 (internal
12  citations omitted). The ALJ suggests Dr. Lawrence's observations are undermined because
13  "claimant's use of oxygen is not medically necessary and her pulmonologists have not been
14  especially concerned with the claimant's respiratory functioning." AR 24. However, even if there
15  are differences in Dr. Lawrence's and other doctors' observations, the ALJ fails to explain why
16  Dr. Lawrence's observations are not credible. *See* AR 24. Indeed, as shown in his 2013 and 2014
17  letters, Dr. Lawrence had been treating Plaintiff since 2004 for "multiple medical problems", had
18  observed her "steady deterioration" over the years, and noted multiple medical interventions
19  have not worked for Plaintiff. AR 669, 1043. The ALJ did not address these findings with
20  specificity, and without an explanation as to why Dr. Lawrence's observations are not credible,
21  the Court cannot determine if the ALJ's reasoning is specific and legitimate and supported by
22  substantial evidence. *See Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (an ALJ errs

1 when he rejects a medical opinion or assigns it little weight when asserting without explanation
2 another medical opinion is more persuasive).

3       Third, the ALJ rejected Dr. Lawrence's medical opinion, finding his opinion was based
4 on Plaintiff's self-report. "An ALJ may reject a treating physician's opinion if it is based 'to a
5 large extent' on a claimant self-reports that have been properly discounted as incredible."
6 *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r Soc. Sec.*
7 *Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citing *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir.
8 1989))). However, "when an opinion is *not more heavily* based on a patient's self-reports than on
9 clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*,
10 763 F.3d 1154, 1162 (9th Cir. 2014) (emphasis added) (citing *Ryan v. Comm'r of Soc. Sec.*, 528
11 F.3d 1194, 1199-1200 (9th Cir. 2008). Here, Dr. Lawrence treated Plaintiff for at least ten years,
12 assessed her at multiple medical appointments, and reviewed medical records and observed her
13 go through "extensive testing." *See* AR 669, 906, 944-45, 985-86, 995-96, 1043. Thus, the record
14 demonstrates Dr. Lawrence did not base his medical opinion more heavily on self-reported
15 symptoms. Rather, Dr. Lawrence provided a medical source statement based on his observations
16 and substantial, long-term treatment history with Plaintiff. Thus, the ALJ's decision discounting
17 Dr. Lawrence's assessment as based on Plaintiff's subjective complaints is not a specific and
18 legitimate reason to discount Dr. Lawrence's opinion.

19       Fourth, the ALJ rejected Dr. Lawrence's opinion regarding plaintiff's activities of daily
20 living, finding Plaintiff is more independent than she has alleged and noting "[h]er treatment
21 records do not show any significant problems in terms of hygiene or grooming." AR 24.
22 However, Dr. Lawrence did not opine regarding Plaintiff's hygiene or grooming. *See* AR 669,
23 1043. Moreover, to the extent the ALJ discounted Dr. Lawrence's medical opinion based upon
24

Plaintiff's self-reported activities of daily living, the Court has already determined the ALJ erred in discounting Dr. Lawrence's opinion as based upon Plaintiff's self-report of subjective complaints. Thus, the fourth reason the ALJ offered to discount Dr. Lawrence's medical opinion is not specific and legitimate or supported by substantial evidence.

Therefore, the ALJ erred as none of the reasons provided by the ALJ to reject Dr. Lawrence's opinion are specific, legitimate, and supported by substantial evidence. *See Reddick*, 157 F.3d at 725.

"[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

Had the ALJ properly considered the opinion of Dr. Lawrence, he may have included additional limitations in the RFC and in the hypothetical questions posed to the vocational expert.[1] AR 19, 69-77. For example, Dr. Lawrence opined Plaintiff "is unable to lift over 10

---

[1] The ALJ determined Plaintiff has the RFC to:

> [P]erform a reduced range of light work . . . . She can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk with normal breaks for a total of two hours in an eight-hour workday. She can sit with normal breaks for a total of six hours in an eight-hour workday. She can occasionally climb

pounds and can only do that rarely." AR 669. He also opined Plaintiff must frequently change positions and cannot climb stairs. *Id.* If Dr. Lawrence's opinions were given great weight, the ALJ may have found Plaintiff unable to work at all or unable to work absent additional limitations not included in his RFC. *See* AR 19. As the ultimate disability determination may have changed, the ALJ's error is not harmless and requires reversal. *Molina*, 674 F.3d at 1115.

B.  <u>Paul Brown, M.D. and Jon Huseby, M.D.</u>

Dr. Brown, a rheumatologist, began treating Plaintiff on February 28, 2012 for treatment of fibromyalgia. AR 1044-47. He opined Plaintiff meets the definition of disability based on her fibromyalgia, noting Plaintiff "has difficulty in sustaining repetitive motor tasks due to both increasing pain and fatigue." AR 1046. He also opined Plaintiff suffers from osteoarthritis, low back pain and neuropathy. AR 1047. Due to her medical conditions, Dr. Brown opined Plaintiff "cannot lift or carry greater than 10 pounds, and only 10 pounds occasionally. She cannot push or pull. She cannot reach overhead, in front, or below the knees. She cannot bend, kneel, squat, crawl, twist, or climb." AR 1047. Dr. Huseby is a pulmonologist who treated Plaintiff on April 22, 2011. AR 431. He opined Plaintiff is "extremely anxious and is clearly disabled but probably not from a pulmonary standpoint." AR 431.

The ALJ dismissed Dr. Brown's and Dr. Huseby's medical opinions for the same reasons he discounted Dr. Lawrence's medical opinions, finding the opinions "inconsistent with the claimant's treatment history and the objective clinical findings set forth above." AR 24. The ALJ also dismissed Dr. Brown's and Dr. Huseby's opinions as based on Plaintiff's self-report. AR 24.

---

ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes, or scaffolds.

AR 19.

For the same reason the ALJ erred in his treatment of Dr. Lawrence's medical opinion, the ALJ erred in his treatment of Dr. Brown's and Dr. Huseby's medical opinions. First, the ALJ's blanket statements discounting Dr. Brown's and Dr. Huseby's medical opinions lack the specificity required by the Court. *See Embrey*, 849 F.2d at 421-22. Second, the record demonstrates that neither doctor based his medical assessment of Plaintiff more heavily on Plaintiff's self-report than on their own clinical assessment, clinical interview, and review of medical records and objective tests. *See* AR 1044-47, 431. Thus, the ALJ's decision discounting Drs. Brown's and Huseby's medical assessment as based on Plaintiff's subjective complaints is not specific and legitimate or supported by substantial evidence. Consequently, the ALJ erred as none of the reasons provided by the ALJ to reject Dr. Brown's and Huseby's opinions are specific, legitimate, and supported by substantial evidence. *See Reddick*, 157 F.3d at 725. Had the ALJ properly considered the opinions of Drs. Brown and Huseby, he may have included additional limitations in the RFC and in the hypothetical questions posed to the vocational expert. Consequently, the ALJ's errors in his treatment of their medical opinions were not harmless. *Molina*, 674 F.3d at 1115. Thus, upon remand, the ALJ shall reevaluate Dr. Brown's and Dr. Huseby's medical opinions.

C. <u>Norman Staley, M.D.</u>

Dr. Staley was a state agency medical consultant who reviewed medical records, including MRI results, and offered a medical opinion finding Plaintiff has difficulty with ambulatory capability. *See* AR 115. The ALJ rejected Dr. Staley's medical opinion finding Plaintiff requires a walker or wheelchair for ambulatory needs. *See* AR 23. The medical records Dr. Staley reviewed to arrive at his opinion included Dr. Lawrence's opinion. *See* AR 114.

1 Because the Court has already found the ALJ erred in evaluating Dr. Lawrence's opinion, the

2 ALJ should also reevaluate the medical opinion of Dr. Staley.

## II. Whether the ALJ erred in considering the findings of the CDIU Investigator.

Plaintiff also argues the ALJ erred in failing to consider the findings of a CDIU investigation.[2] Dkt. 12, pp. 15-16. Disability Determination Services ("DDS") "referred the case to the Office of Inspector General, due to inconsistencies" in Plaintiff's allegations and presentations throughout the file in connection with her application for social security benefits. AR 783; 792-97. After several hours of surveillance, the CDIU investigator determined Plaintiff lives an isolated life and leaves her home only for doctors' appointments. AR 783, 792-97. The CDIU investigator also determined although Plaintiff spends her "days in bed or in her recliner, there was not sufficient objective evidence/findings to support her level of inactivity." AR 783.

The ALJ did not discuss the CDIU investigative findings, other than noting the CDIU investigative findings do not support Plaintiff's allegations of depression and anxiety. *See*, *e.g.*, AR 12-27. When an ALJ ignores or improperly discounts significant and probative evidence in the record favorable to a claimant's position, the ALJ "thereby provide[s] an incomplete

---

[2] "The Social Security Act expressly authorizes the Commissioner to 'conduct such investigations and other proceedings as the Commissioner may deem necessary or proper.'" *Elmore v. Colvin*, 617 F. App'x 755, 757 (9th Cir. 2015) (citing 42 U.S.C. § 405(b)(1)). In connection with this authority, the Commissioner may request investigations through the CDIU. *See id.*; *see also Girard v. Astrue*, No. C11-549-JCC-JPD, 2011 WL 6753132, at *7 (W.D. Wash. Dec. 1, 2011), *report and recommendation adopted,* No. C11-0549-JCC, 2011 WL 6753114 (W.D. Wash. Dec. 23, 2011); *Manor v. Astrue*, No. C10-5944-JLR, 2011 WL 3563687, at *4-6 (W.D. Wash. July 28, 2011), *report and recommendation adopted,* No. C10-5944-JLR, 2011 WL 3567421 (W.D. Wash. Aug. 12, 2011).

REPORT AND RECOMMENDATION - 10

1 | residual functional capacity [RFC] determination." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th

2 | Cir. 2012). The Court finds the results of the CDIU investigation constitute significant

3 | probative evidence the ALJ must consider, particularly where, as here, the results support some

4 | of Plaintiff's allegations of social isolation and disabling symptoms. *See* AR 783, 792-97.

5 | Thus, upon remand, the ALJ shall consider the results of the CDIU investigation when

6 | determining Plaintiff's RFC.

7 | **III. Whether the ALJ erred in assessing Plaintiff's credibility.**

8 | Plaintiff contends the ALJ failed to give clear and convincing reasons for rejecting

9 | Plaintiff's testimony about her symptoms and limitations. Dkt. 12, pp. 2-10. Absent evidence of

10 | malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony.

11 | *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947

12 | F.2d 341, 344 (9th Cir. 1991)). "General findings are insufficient; rather, the ALJ must identify

13 | what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*,

14 | 81 F.3d at 834.

15 | In this case, the ALJ found Plaintiff's testimony concerning the intensity, persistence, and

16 | limiting effects of her symptoms to be not entirely credible. *See* AR 19-21. In light of the ALJ's

17 | error evaluating the medical evidence, the credibility of the Plaintiff's statements necessarily

18 | must be reviewed. Thus, upon remand, the ALJ should reconsider Plaintiff's alleged symptoms

19 | anew as necessitated by further consideration of the medical opinion evidence.

20 | **IV. Whether the ALJ erred in rejecting the lay witness statements.**

21 | Plaintiff also avers the ALJ erred in assessing the lay witness testimony. Dkt. 12, p. 16.

22 | Testimony from "other non-medical sources," such as friends and family members, *see* 20 C.F.R.

23 | § 404.1513 (d)(4), may not be disregarded simply because of their relationship to the claimant or

24 |

because of any potential financial interest in the claimant's disability benefits. *Valentine v. Comm'r SSA,* 574 F.3d 685, 694 (9th Cir. 2009) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). An ALJ may disregard opinion evidence "if the ALJ 'gives reasons germane to each witness for doing so.'" *Turner*, 613 F.3d at 1224 (quoting *Lewis*, 236 F.3d at 511).

Here, the ALJ rejected all of the lay witness statements, finding them "similar to the claimant's own subjective complaints of incapacitating respiratory problems, pain, [and] fatigue." AR 24. However, as the Court has already instructed the ALJ to re-evaluate Plaintiff's testimony and statements upon remand, the ALJ shall also re-evaluate the lay witness opinions anew.

## CONCLUSION

Based on the above stated reasons, the undersigned recommends this matter be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further proceedings consistent with this Report and Recommendation. The undersigned also recommends judgment be entered for Plaintiff and the case be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on December 2, 2016, as noted in the caption.

Dated this 17th day of November, 2016.

David W. Christel
United States Magistrate Judge